UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RACHEL L. L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-CV-365 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

Rachel L. applied for social security disability insurance benefits, alleging that she has been unable to work since August 1, 2012. The ALJ found that she has severe impairments of anxiety disorder, post-traumatic stress disorder, and obesity. Ms. L. argues that, in formulating her residual functional capacity, the ALJ improperly evaluated treating physician opinions and also erred in weighing her subjective symptoms. Remand is required for both reasons.

### I. FACTUAL BACKGROUND

Although Ms. L. alleges a disability onset date of August 1, 2012, she first sought treatment on February 2, 2015, due to a distrust of medical providers. Ms. L., who is morbidly obese, received treatment for swollen feet and back pain. She also sought treatment for several mental health conditions stemming from an episode in her youth that caused post traumatic stress disorder and anxiety. Ms. L. filed her application for disability benefits on April 10, 2015, and her date last insured was December 31, 2016. On June 13, 2017, the ALJ conducted a hearing.

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

The ALJ made the following residual functional capacity finding in the August 21, 2017 decision:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could have occasionally climbed ramps and stairs, but could never have climbed ladders, ropes, or scaffolds, and could have occasionally, balanced, stooped, knelt couched and crawled; the claimant could have performed the tasks assigned, but not always at a production rate pace, however she would have been able to meet the end of day work goals; the claimant could have had occasional contact with co-workers, supervisors, and the general public; the claimant could have remembered and followed simple but not detailed instructions, and could have occasionally adapted to rapid changes in the workplace.

AR 71. The ALJ found that Ms. L. was not disabled. The Appeals Council declined review, and Ms. L. filed this action seeking judicial review of the Commissioner's decision.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does

2

not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform relevant past work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Ms. L. contends that the ALJ improperly weighed the opinions of her three treating physicians as well as her subjective complaints. Because the ALJ's treatment of Ms. L.'s subjective complaints informs the weight the ALJ gave to the treating physician opinions, the Court begins with the weight given to Ms. L.'s subjective complaints.

**A.      Subjective Complaints**

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). Importantly, the "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. Subjective allegations of disabling symptoms

4

alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) The individual's daily activities;
> (ii) Location, duration, frequency, and intensity of pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) Type, dosage, effectiveness, and side effects of any medication;
> (v) Treatment, other than medication, for relief of pain or other symptoms;
> (vi) Other measures taken to relieve pain or other symptoms;
> (vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *7–8.

In this case, the ALJ gave several reasons for not giving full weight to Ms. L.'s limitations. First, the ALJ noted that, despite Ms. L.'s alleged onset date of August 2012, the documented clinical record does not begin until February 2015. AR 72. However, nowhere did the ALJ discuss Ms. L.'s longstanding fear of doctors as an explanation for the delay.

Second, the ALJ stated that Ms. L. sought "sporadic treatment" for her complaints of hypervigilance, paranoia, anxiety, and difficulty interacting with others. *Id*. The ALJ then commented that, "despite some objective documentation as to the claimant appearing anxious, her objective clinical records are 'largely benign in nature.'" *Id*. The ALJ explained: "For example, the claimant is routinely documented as being alert, oriented, pleasant, cooperative, able to follow an interview process, without psychomotor activity, goal directed as to language, a fund of knowledge consistent with her education, clean, normal as to memory, mood, affect, associations, thought content/process, and speech, with fair insight and judgment and good memory, attention and concentration." AR 72 (citing 1F/2, 4F/1, 10, 48, 3F, 7F/14, 17, 19, 21, 23; 13F/29, 31, 33, 35, 37, 39, 41). The ALJ reasoned that these normal objective findings and mental status examinations fail to indicate symptomology that would preclude all basic work

5

activity. But the ALJ did not discuss the evidence that Ms. L. saw a counselor on a weekly basis or that she saw a psychiatrist monthly for medication management. Ms. L. suffered a wide variety of mental health symptoms and took prescription medication for her diagnosed conditions of PTSD, anxiety, and depression. *See* AR 327, 329, 371–72, 444, 563, 570, 587.

Also, many of the records that the ALJ cited consistently included other symptoms that the ALJ did not discuss, such as anxious mood and sad and anxious affect, which resulted in an ability to interact socially or function outside the home given their basis in PTSD. *See* AR 388, Ex. 4F/10; AR 376, Ex. 3F/3; AR 450, Ex. 7F/2; AR 462, Ex. 7F/14; AR 471, Ex. 7F/23; AR 556, Ex. 13F/1; AR 584, Ex. 13F/29; AR 586, Ex. 13/F31; AR 588, Ex. 13/F33. Ms. L. notes that her symptomology over many treatment records included panic attacks, anxiety, difficulty interacting with others, difficulties in concentration, memory loss, exaggerated startle response, hypervigilance and impairment in social, occupational, and other areas of functioning, skin picking, uncontrolled anger, avoidance of people and places, fear of crowds and loud noises, difficulty sleeping, struggles with authority figures, jumpiness, excessive worrying, obsessively checking if doors are locked, paranoia, and flashbacks. AR 322, 323, 329, 427, 480, 501, 518, 556, 568, 588, 594, 596. The ALJ appears to have discredited Ms. L.'s mental health symptoms based on several normal findings without addressing the co-existing abnormal findings, the cyclical nature of her symptoms, and the attempts to identify the best treatment through medication. The Seventh Circuit Court of Appeals has repeatedly recognized that mental health impairments are often misunderstood. *See, e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)).

Third, the ALJ seemed to think that Ms. L.'s counseling was not significant treatment, writing, "other than the aforementioned visits, the claimant's only other documented mental health treatment consists of no more than counseling notes (Ex. 13F; 7F)," and found that "this exceptionally conservative treatment, which is without necessitated emergency treatment or inpatient hospitalization, indicates that the claimant is able to manage her symptomology." AR 72–73. However, Ms. L. went to counseling on a weekly basis and saw a psychiatrist on a monthly basis for medication management. This is neither sporadic nor benign. The ALJ did not discuss either fact. Ms. L. was taking Prozac, Zoloft, Lexapro, Clomipramine, Klonopin, Vistaril, and Trazadone, with constant adjustments to the doses and the medications. AR 368, 510, 516, 570, 587, 589, 591. The ALJ did not acknowledge or discuss Ms. L.'s medications. Nor is there any basis in the record for discrediting Ms. L. for a lack of emergency treatment or inpatient hospitalizations, especially in light of the ALJ's failure to fully discuss Ms. L.'s consistent and ongoing mental health treatment. *See Johnson v. Berryhill*, 3:17-CV-925, 2019 WL 1011875, at *4 (N.D. Ind. Mar. 4, 2019) (discussing *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015)).

Finally, the ALJ understood that Ms. L. is "unable to have interaction with men" but concluded that Ms. L. "was married and living with her husband throughout the period in question, which is strong indicia that she is capable of some level [of] interaction with men." AR 73 (citing Ex. 4F/48). This is a significant mischaracterization of Ms. L.'s testimony. At the hearing, Ms. L. testified that she prefers female doctors because she is terrified to be alone with men that she does not know extremely well. AR 105. She testified that she only sees Dr. Brown because he allows either his nurses or Ms. L.'s husband to be in the examining room. AR 106. The ALJ did not consider this testimony. The record the ALJ cited, Ex. 4F/48, does not reference Ms. L.'s fear of being alone with men, but page 43 of the record reports that Ms. L. "can't talk or

7

trust any man, can't even have any interaction with men *without her husband*." AR 421

(emphasis added).

Overall, the ALJ's assessment of Ms. L.'s subjective symptoms is not supported by substantial evidence. The weight the ALJ gave to Ms. L.'s subjective symptoms impacted the weight given to her treating physicians because her mental health treatment was based largely on her reports of subjective symptoms. Remand is required for proper consideration of Ms. L.'s subjective symptoms. On remand, the ALJ will have an opportunity to explain the weight given to Ms. L.'s husband's testimony, which is consistent with Ms. L.'s subjective statements and her reports to her treating physicians, as required under SSR 06-3p. *See* 20 C.F.R. § 404.1527(f)(2).

**B.      Treating Physician Opinions**

The treating physician rule, applicable in this case, provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ applies the factors set forth in 20 C.F.R. § 404.1527(c)(2)–(6) to determine the weight to give the opinion. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). Ms. L. argues that the ALJ improperly rejected the opinions of treating physicians Dr. Kular, Dr. Graham, and Dr. Brown. The Court considers each opinion in turn.

**1.      Dr. Kular**

Dr. Kular began treating Ms. L. in April 2015. In October 2015, Dr. Kular completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. He noted diagnoses of major depression and post traumatic stress disorder. Dr. Kular opined that Ms. L. had moderate limitations in the ability to understand and remember complex and detailed instructions; carry out complex and detailed instructions; maintain concentration and attention; perform activities within a schedule, maintain regular attendance, and be punctual; sustain ordinary routine without special supervision; work in coordination with or in proximity to others without distraction; complete a normal workday/workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; maintain socially appropriate behavior; respond appropriately to changes in the work setting; respond appropriately to work stresses; be aware of normal hazards and take precautions; and set realistic goals or make plans independently of others. AR 444–46. Dr. Kular opined that Ms. L. had marked limitations in the ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism; get along with coworkers; travel in unfamiliar places; and use public transportation. AR 446.

The ALJ gave this opinion partial weight for two reasons. First, the ALJ commented that Dr. Kular's "final conclusion appears to be that the claimant is unable to work full time. However, to begin, the final determination concerning the conclusion of whether or not a claimant is 'disabled' is reserved to the Commissioner." AR 73–74. This rationale is disingenuous. The last page of the MRFC form asks the doctor to state whether the limitations identified in the previous sections would permit the claimant to engage in full-time work, five days a week on a sustained basis, and Dr. Kular answered "no." The "answer to the question [of

whether a claimant is sufficiently disabled to qualify for social security disability benefits] depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012)). This is not a situation in which the *only* opinion given by the treating physician is a single statement that the claimant is "disabled." Although the ALJ is not required to come to the same conclusion as Dr. Kular, the ALJ is required to consider both Dr. Kular's findings on specific limitations as well as the effect of those limitations on the ability to work.

Second, the ALJ reasoned that Ms. L.'s clinical record "is conspicuously absent of objective documentation of mental health or psychiatric symptomology to support said opinions . . . . Consequently, said opinions appear to be no more than the parroting of the subjective complaints reported by the claimant." AR 74. Ms. L. argues that this statement shows that the ALJ does not understand the nature of mental illness. Ms. L. again contends that, as is often the case with mental illness, her symptoms wax and wane, and mental health impairments are often misunderstood. *See Punzio*, 630 F.3d at 710; *Phillips*, 413 F. App'x at 886. As discussed in more detail above, Ms. L.'s symptomology included panic attacks; difficulties in concentration; hypervigilance; impairment in social, occupational, and other areas of functioning; avoidance of people and places; and struggles with authority figures. Ms. L. again notes that she has been treated with a variety of prescription drugs for her psychological problems, including Prozac, Zoloft, Lexapro, Clomipramine, Klonopin, Vistaril, and Trazadone. The Court agrees that it is unclear what evidence of Ms. L.'s mental illness the ALJ required.

Moreover, Dr. Kular treated Ms. L. for over eighteen months, which the ALJ did not acknowledge. There is no indication in the treatment notes that Dr. Kular did not believe Ms.

L.'s subjective complaints. Notably, the ALJ's decision does not suggest that she was aware of or considered the 20 C.F.R. § 404.1527(c) factors, one of which is length of treatment relationship.

In not giving controlling weight to Dr. Kular's opinion, the ALJ did not explain why the opinion was not well supported or why it was inconsistent with other substantial evidence in the record. In giving partial credit to the opinion, the ALJ did not explain which parts of the opinion she founded supported by the evidence. Remand is required for a proper weighing of the opinion.

**2.     Dr. Graham**

On May 16, 2017, psychiatrist Darnita Graham, M.D., completed a Mental Health Assessment of Ability to Do Work-Related Activities (Mental) form. AR 616–17 (Ex. 16F). Dr. Graham's opinion was more limiting that that of Dr. Kular, opining that Ms. L.'s ability to adjust to a job was "poor/none" regarding the ability to follow work rules; relate to co-workers; deal with the public; interact with supervisors; deal with work stress; maintain attention and concentration; understand, remember, and carry out complex job instructions; understand, remember, and carry out detailed, but not complex, job instructions; and relate predictably in social situations. *Id*. Dr. Graham opined that Ms. L.'s ability to adjust to a job was "fair" regarding the ability to use judgment; function independently; understand, remember, and carry out simple job instructions; maintain personal appearance; and behave in an emotionally stable manner. *Id*. Dr. Graham indicated that this report is consistent with her clinical notes, test results, and experience with Ms. L. in the office, and Dr. Graham provided a narrative of Ms. L.'s symptoms of anxiety and hypervigilance. *Id*. 617.

The ALJ gave the opinion little to no weight. The ALJ reasoned that the opinion is based on Ms. L.'s own reports and referenced the "benign" nature of the clinical record. AR 74. The

11

ALJ does not identify which parts of the clinical record are "benign" in the context of weighing Dr. Graham's opinion. And, as discussed above in the context of Ms. L.'s subjective complaints, this finding of a "benign" clinical record is not well supported by the record. Ms. L. suffered a wide variety of mental health symptoms and took prescription medication for her diagnosed conditions of PTSD, anxiety, and depression. Ms. L. attended weekly therapy sessions and monthly appointments with her psychiatrist for treatment. "A psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning." *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016); *see also Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015) ("[P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct, most psychiatric evidence would be totally excluded from social security disability proceedings . . . .").

Notably, the same Medical Assessment of Ability to Do Work-Related Activities (Mental) form was completed by Deborah Thompson, LCSW, and Dr. Graham almost a year earlier on July 13, 2016 (Ex. 8F), with identical opinions of Ms. L.'s ability to adjust to work. AR 521–22. Yet the ALJ incorrectly attributed the July 13, 2016 form to Dr. Brown, who treated Ms. L. for her physical impairments, as discussed in the next section. *See* AR 74.

The ALJ commented generally that Dr. Graham's opinions are "extreme" but did not identify which opinions are not supported by the record or connect this reasoning to the medical record. Once again, the ALJ did not giving controlling weight to a treating psychiatrist's opinion and failed to explain how the opinion is not well supported or how it is inconsistent with other substantial evidence of record. The ALJ did not acknowledge any consideration of the factors set out in § 404.1527(c). Remand is required for the proper explanation of the weight given to the opinion of treating psychiatrist Dr. Graham.

### 3. Dr. Brown

Ms. L. treated with Dr. Brown beginning in March 2015. On April 19, 2017, Dr. Brown completed a Physical Residual Functional Capacity Medical Source Statement. AR 611–14. Regarding her physical health, Dr. Brown diagnosed Ms. L. with low back pain, obesity, and edema, describing her pain as radiating leg pain, decreased range of motion of the right leg, and numbness. AR 611. He opined that Ms. L. suffers side effects from her medication, including drowsiness, joint pain, lethargy, dizziness, and nausea. *Id*. He opined that she can frequently lift five pounds and occasionally lift ten pounds and can occasionally carry five pounds. AR 611–12. Dr. Brown indicated that Ms. L. has problems with balance while walking and problems with stooping, crouching, and bending. *Id*. 612. He opined that she needs to lie down twenty minutes at a time before sitting, walking, or standing, that she needs to lie down about six hours in an eight-hour workday, and that she can sit for one hour in an eight-hour workday. *Id*. He found that she could do reaching, including overhead reaching, only five percent of the workday. AR 613. He indicated that she could do no climbing of any kind. *Id*. Dr. Brown found that Ms. L. would be "off task" over thirty percent of a workday, would miss five days or more per month, and could efficiently perform a job less than fifty percent of the time. AR 614.

The ALJ gave Dr. Brown's April 2017 opinion little to no weight. The ALJ's only stated reason for this weight is that "[s]aid extreme limitations are extraordinarily inconsistent with a clinical record that fails to support any difficulty ambulating, reaching, or climbing." AR 74. The ALJ offered no further analysis. However, Dr. Brown had been treating Ms. L. since March 2015 at the time he completed the form, which the ALJ did not acknowledge. Ms. L. presented to Dr. Brown complaining of back pain. AR 523. She underwent an MRI of her lumbar spine that showed facet joint arthropathy. AR 609. She experienced swelling of her legs and feet on

multiple occasions. AR 527, 619. The ALJ did not discuss whether any of these clinical findings were consistent with Dr. Brown's opinion.

In contrast, the ALJ discussed these clinical findings in the context of Ms. L.'s obesity, noting the reports of swelling, back pain, and the "more or less normal MRI imagining of the lumbar spine." AR 73. The ALJ found that Ms. L. was "without any specific abnormality that could be attributed to her body habitus," noting that Ms. L. consistently displayed a normal gait and failed to indicate abnormalities attributed to her obesity. *Id*. The ALJ found that Ms. L.'s obesity would reduce her stamina and agility to conduct postural activity. *Id*. The Court finds the ALJ did not err in considering Ms. L.'s obesity.

Because this matter is being remanded on other grounds, the ALJ will have an opportunity to address the § 404.1520(c) factors in relation to Dr. Brown's opinion. The ALJ will also have an opportunity to reconcile the residual functional capacity for occasional contact with coworkers, supervisors, and the general public with the state agency consultative reviewer's opinion regarding Ms. L.'s ability to relate to co-workers and supervisors on a superficial and limited basis.

## V.  CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 23, 2019

/s/ JON E. DEGUILIO  
Judge  
United States District Court